FILED

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA NOV 22 PM 12: 48
ORLANDO DIVISION

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

JOHN NORTHRUP, Individually and on behalf
of a Class of Similarly Situated Individuals,

    Plaintiff,

vs.                                                                                          CASE NO. 6:17-CV- 2025-ORL-37 TBS

FLORIDA'S FINEST INSURANCE, INC.,

    Defendant.

_____/

## CLASS ACTION COMPLAINT

    Plaintiff John Northrup, on behalf of himself and all others similarly situated, alleges and

avers as follows:

## INTRODUCTION

    1.    Plaintiff brings this Class Action Complaint for damages, injunctive relief, and

any other available legal or equitable remedies, resulting from the illegal actions of Florida's

Finest Insurance, Inc. ("Defendant"), in negligently, and/or willfully contacting Plaintiff through

SMS or "text" messages on Plaintiff's cellular telephone, in violation of the Telephone

Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA"), thereby invading Plaintiff's

privacy. Plaintiff alleges as follows upon personal knowledge as to his own acts and experiences,

and, as to all other matters, upon information and belief, including investigation conducted by his

attorneys.

## PARTIES

    2.    Plaintiff John Northrup is an individual who resides in Hillsborough County,

Florida.

3.      Defendant Florida's Finest Insurance, Inc. ("FFI"), is a Florida corporation liability company, with principal address at 100 Lakeshore Dr., #104, Altamonte Springs, Seminole County, Florida, 32714. It may be served through its registered agent for service, Joshua Lee Jones at 1116 E. Lakeview Cir., Altamonte Springs, FL, 32714.

4.      FFI owns and operates Forerunner Insurance Group, an active insurance company registered in Florida with registration number G16000063179.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action and the Defendant pursuant to 28 U.S.C. § 1331 in that this action arises under a United States federal statute, specifically the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA"). The TCPA specifically authorizes this Court to exercise jurisdiction. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff seeks up to $1,500 in damages for each text message in violation of the TCPA, which, when aggregated among a proposed class number of more than five thousand, exceeds the $5,000,000 threshold for federal court jurisdiction. Further, Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant, providing jurisdiction under 28 U.S.C. Section 1332(d)(2)(A).

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and/or (b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District, in that the text message at issue was sent to a mobile phone number registered in this District.

## GENERAL ALLEGATIONS

7.      Defendant markets insurance to trucking companies through its wholly-owned

2

subsidiary Forerunner Insurance Group.

8.     Defendant made the deliberate decision to engage in bulk marketing by sending truckers, including the Plaintiff, advertisements through Short Message Services. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages.

9.     An "SMS message" is a text message directed to a wireless device through the use of the telephone number assigned to the device. For purposes of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), a text message is considered to be a call. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115, ¶ 165 (2003) ("2003 TCPA Order").

10.     When an SMS or "text" message call is successfully made, the recipient's cell phone rings or otherwise notifies the recipient of the text message that a text message is being received.

11.     As cellular telephones are inherently mobile and are carried by their owners at all times, text messages are received by the called party virtually anywhere.

12.     Unlike standard advertising methods, bulk advertising by use of text messages cost recipients money, because cell phone users typically pay for the text messages they receive, either individually, or in bulk.

13.     Over the course of an extended period beginning no later than in 2017, Defendant and its agents directed the mass transmission of text messages to the cell phones of persons they hoped were potential customers of Defendant's services.

14.     On or about November 6, 2017, Plaintiff received an unsolicited SMS or "text" message to his wireless phone in Florida. The text was sent to his wireless phone number with area code 813 (the area code for Tampa, Florida and surrounding areas). It stated:

> Ready for a LOW Renewal Rate on your Trucking Insurance? Give us a call for a FREE Insurance Quote, Forerunner Insurance Group 407-675-3858 2end msgs reply STOP.

15.     Plaintiff provided no consent to receive this text message, which was sent by Defendant in an effort to promote the sale of its insurance products to truck drivers.

16.     The unsolicited text messages placed to Plaintiff's cellular telephone was placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1).

17.     "The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a)(5).

18.     "The term 'telephone solicitation' means the initiation of a . . . message for the purpose of encouraging the purchase . . . of . . . services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." 47 U.S.C. § 227 (a)(4).

19.     The telephone numbers that the Defendant, or its agents, sent the text messages to were assigned to cellular telephone services pursuant to 47 U.S.C. § 227(b)(1)(A)(iii).

20.     These telephone text messages constituted "calls" under the TCPA that were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i) and applicable regulations which make clear that texts are included within the TCPA.

21.     Plaintiff did not provide Defendant or its agents prior express consent to receive unsolicited text messages pursuant to 47 U.S.C. § 227 (b)(1)(B).

22.     The text message by Defendant or its agents therefore violated 47 U.S.C. § 227(b)(1).

23.     Plaintiff, John Northrup, has standing to bring these claims because Defendant's violation of the TCPA resulted in a concrete and particularized injury to him, in the form of invasion of privacy, an unwanted and unauthorized text message received by his cell phone, which caused wasted time addressing an unwanted text message, unwarranted distraction from his work activities (including driving large trucks, and loading and unloading products), aggravation and distress, unavailability of his cell phone when it was receiving the unauthorized text message, depletion of his cell phone's battery and the resulting cost to recharge the phone, and potential financial loss in the form of increased charges from his cell phone carrier.

24.     Upon information and belief, Defendant obtained Plaintiff's cell phone number through the website of the U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA). FMCSA maintains information regarding truck drivers (often including their cell phone numbers) and makes it available to the public for purposes of public safety via its website, https://safer.fmcsa.dot.gov, and not for purposes of allowing marketers to send unsolicited text messages to truck drivers.

25.     In fact, the same website where Defendant obtained the cell phone numbers of Plaintiff and the other class members contains FMCSA's rules that restrict texting and the use of hand-held mobile phones by truck and bus drivers while operating a CMV (i.e., a commercial motor vehicle). FMCSA's website notes that its research "shows the odds of being involved in a

safety-critical event (e.g., crash, near-crash, unintentional lane deviation) are 23.2 times greater for CMV drivers who text while driving than for those who do not." It states: "Texting drivers took their eyes off the forward roadway for an average of 4.6 seconds. At 55 mph, this equates to a driver traveling 371 feet, or the approximate length of a football field (including the end zones)—without looking at the roadway!" It states: "Texting while driving can result in driver disqualification. Penalties can be up to $2,750 for drivers and up to $11,000 for employers who allow or require drivers to use a hand-held communications device for texting while driving." It warns: "Simply do not type or read a text message while driving a CMV!"

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated ("the Class").

27.     Plaintiff represents, and is a member of the Class, consisting of: all persons within the United States who received an unsolicited SMS or text message from Defendant, or an agent of Defendant, on a paging service, cellular phone service, or other service, through the use of any automatic telephone dialing system as set forth in 47 U.S.C. Section 227(B)(1)(A)(3) or artificial or prerecorded voice, which SMS or text messages by Defendant (or agent of Defendant) was not made for emergency purposes or with the recipients' prior express consent, within the four years prior to the filing of this Complaint.

28.     Defendant and its employees or agents are excluded from the Class.

29.     Plaintiff does not know the number of members in the Class, but believes the Class members number in the thousands, if not more. In Plaintiff's experience, companies that market to truck drivers by sending text messages, do not just send texts to a few truck drivers.

6

Rather, they engage in large mass marketing programs to thousands of truck drivers whose cell phone numbers are collected and aggregated into marketing lists without the consent of the cell phone owners. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

30.     Plaintiff and members of the Class were harmed by the acts of Defendant in at least the particularized and concrete ways set forth above.

31.     This suit seeks only statutory damages and injunctive relief on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

32.     The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court.

33.     The Class can be identified through Defendant's records or Defendant's agents' records.

34.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.

35.     The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

a.     Whether, within the four years prior to the filing of this Complaint, Defendant or its agents placed cellular telephone SMS or text messages for purposes of soliciting new customers without the recipients' prior express consent;

b.     What systems and methodologies were used to collect the cell phone numbers, and send the text messages at issue in this case;

7

c.      Whether the systems used to place the cellular telephone SMS or text messages constituted automatic telephone dialing systems under the TCPA;

d.      Whether Defendant's violation of the TCPA was willful or knowing, such that the award should be increased up to three times pursuant to 47 USC §227(b)(3)(c); and

e.      Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

36.     As a person who received at least one unsolicited telephone SMS or text message without his prior express consent, Plaintiff is asserting claims that are typical of the Class.

37.     Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

38.     Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct.

39.     Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct.

40.     Because of the size of the individual Class member's claims, few, if any, Class members could not afford to individually seek legal redress for the wrongs complained of herein.

41.     Plaintiff has retained counsel experienced in handling class action claims of this nature.

42.     A class action is a superior method for the fair and efficient adjudication of this controversy.

43.     Class-wide damages are essential to induce Defendant to comply with federal law.

44.     The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of the TCPA are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many individual claims.

45.     Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

46.     The members of the Class are capable of being readily ascertained from the information and records in the possession or control of Defendant.

47.     The Class members are so numerous that individual joinder of all members is impractical.

48.     Plaintiff's claims are typical of those of the Class and are based on the same legal and factual theories.

49.     Plaintiff and his counsel will fairly and adequately represent and protect the interests of the Class. Plaintiff has been subject to the same unlawful acts as the rest of the Class members and is ready, willing and able to serve as a Class representative. Moreover, Plaintiff's counsel are experienced in handling complex litigation, and have extensive class action experience and a long track record of successful prosecution of class action cases. Neither Plaintiff nor his counsel has any interest that might cause them not to vigorously pursue this action.

50.     Certification of a Class under Fed. R. Civ. P. 23(b)(3) is appropriate in that Plaintiff and the Class members seek liquidated statutory monetary damages, common questions

predominate over any individual questions, and a class action is superior for the fair and efficient adjudication of this controversy. A class action will cause an orderly and expeditious administration of the Class members' claims and economies of time, effort and expense will be fostered and uniformity of decisions will be ensured. Moreover, the individual Class members are unlikely to be aware of their rights and not in a position (either through experience or financially) to commence individual litigation against Defendant.

51.     Alternatively, certification of a class is appropriate under Fed. R. Civ. P. 23(b)(1), in that inconsistent or varying adjudications with respect to individual members of the Class would establish incompatible standards of conduct for Defendant or adjudications with respect to individual members of the Class as a practical matter would be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.

52.     Alternatively, certification of a class is appropriate under Fed. R. Civ. P. 23(b)(2) because the parties opposing the Class have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief appropriate respecting the Class as a whole.

**FIRST CAUSE OF ACTION**
**NEGLIGENT VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ**

53.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

54.     Each such text message call was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random

or sequential number generator, or a system that otherwise qualified as an automatic telephone dialing system under the TCPA. By using such equipment, Defendant was able to effectively send thousands of text messages simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention. These text messages were sent without the prior express consent of the Plaintiff and the other members of the Class to receive such text messages.

55.     The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq.* As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to an award of $500.00 each in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B). Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendant:

a.  As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500.00 in statutory damages, per violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

b.  Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

c.  As a result of Defendant's, and Defendant's agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class

member increased damages, as provided by statute, up to $1,500.00 per violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

d.  Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

e.  Any other relief the Court may deem just and proper.

**SECOND CAUSE OF ACTION**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ.**

56.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

57.     Upon information and belief, Defendant's violations of the TCPA were willful and/or knowing. Accordingly, Plaintiff and the Class are entitled to have their awards increased to an amount not more than three times the $500 liquidated damages amount, or $1,500.00 per violation, pursuant to 47 U.S.C. § 227(b)(3)(B and C).

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendant: As a result of Defendant's, and Defendant's agents', willful violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $1,500.00 in statutory damages, per violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

a.  Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

b.  As a result of Defendant's, and Defendant's agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member increased damages, as provided by statute, up to $1,500.00 per violation,

pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

c.  Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct

in the future.

d.  Reasonable and necessary attorneys' fees and expenses.

e.  Any other relief the Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  November 21, 2017                    Respectfully submitted,

*/s/ Seth M. Lehrman*
Seth M. Lehrman (Fla. Bar No. 132896)
E-mail: seth@epllc.com
EDWARDS POTTINGER, LLC
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Facsimile: (954) 524-2822

and

Cory S. Fein (*Pro Hac Vice to be filed*)
E-mail: cory@coryfeinlaw.com
CORY FEIN LAW FIRM
712 Main St., #800
Houston, TX  77002
Telephone:  (281) 254-7717
Facsimile:  (530) 748-0601

*Attorneys for Plaintiff*